IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| BRENDA L. BOWERS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | C.A. No. 13-837-SLR-SRF |
|  | ) |  |
| CAROLYN COLVIN, | ) |  |
| Commissioner of | ) |  |
| Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiff Brenda L. Bowers ("plaintiff" or "Bowers")[1] appeals the decision of Carolyn Colvin, the Commissioner of Social Security ("defendant" or the "Commissioner"), denying her application for supplemental security income under Title XVI of the Social Security Act. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

Pending before the court are the parties' cross-motions for summary judgment. (D.I. 15, D.I. 18) For the reasons set forth below, I recommend that the court GRANT Bowers' motion for summary judgment, DENY defendant's motion for summary judgment, and award benefits to Bowers.

### II. BACKGROUND

#### A. Procedural History

On December 28, 2006, Bowers protectively filed an application for Supplemental Security Income ("SSI"). (D.I. 16; Tr. 23, 119-20, 888, 902, 912, 1035) After denial at the prehearing levels (Tr. at 75-88), the case was brought before Administrative Law Judge Judith A.

---

[1] Plaintiff is referred to in the record as Brenda Lynn Hamilton.

Showalter (the "ALJ") (Tr. at 20-68). On October 28, 2009, the ALJ issued a decision finding that Bowers was not disabled. (Tr. at 10-19, 937-46) The Appeals Council subsequently denied Bowers' request for review on June 25, 2010. (Tr. at 2-4) Bowers then brought a civil action in this court challenging the ALJ's decision. (Tr. at 950-67)

After consideration of the record, this court issued a decision on August 2, 2012[2] remanding the case for the ALJ to consider:

> 1) the non-examining State agency opinions, and the residual functional capacity and hypothetical question to the extent they rely upon those opinions; 2) the opinion of Drs. Morris and Lifrak; 3) Plaintiff's mother's statement; 4) the record surrounding Plaintiff's alleged absenteeism from recovery from three abdominal surgeries within a twelve month period, incontinence, and mental decompensation; 5) whether Plaintiff's depression comprises a listed impairment; and 6) whether sufficient jobs that Plaintiff can perform exist in the national economy.

(Tr. at 950-67).

On remand, the ALJ held a new hearing. (Tr. at 910-33) On April 12, 2013, the ALJ issued another decision denying benefits. (Tr. at 888-902) Following the denial of benefits, Bowers again exercised her right to file a civil action with this court. The relevant time period for the present appeal is from December 28, 2006 to October 28, 2009.[3] (Tr. at 888, 970-71)

### B. Factual Background[4]

Bowers was born in 1966, and was forty when she filed for SSI. (Tr. at 119) She was a special education student and received a certificate of attendance, but not a high school diploma. (Tr. at 29-30, 153) Bowers worked deboning chickens from 1987 to 1996, and sorted clothes at a

---

[2] *See Bowers v. Astrue*, C.A. No. 10-622-RGA, 2012 WL 3150392 (D. Del. Aug. 2, 2012).
[3] Bowers filed a new application for SSI on October 28, 2009 and was found disabled as of October 29, 2009, the date after the ALJ's initial decision in the present matter. (Tr. at 888, 970) The Appeals Council affirmed the decision, finding that Bowers was disabled as of the day after the filing of the new application on October 29, 2009. (Tr. at 970-71)
[4] The court refers to Bowers' opening brief in the prior civil action and Judge Andrews' Memorandum Opinion in that action for a more detailed summary of the factual background of this case. (C.A. No. 10-622-RGA, D.I. 14; Tr. at 953-67)

dry cleaner from 2000 to 2001. (Tr. at 148) Bowers alleges disability based on diverticulitis and bipolar disorder. (Tr. at 525, 531)

### C. The ALJ's Findings from the Second Hearing

Based on the factual evidence and the testimony of Bowers, her mother, and the VE, the ALJ determined that Bowers was not disabled from December 28, 2006 through October 28, 2009. The ALJ found, in pertinent part, that:

1. The claimant has not engaged in substantial gainful activity since December 28, 2006, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: history of abdominal surgeries for diverticulitis, hernia, and hysterectomy; borderline intellectual functioning; depression; tobacco abuse; and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that from December 28, 2006 to October 29, 2009, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant had a high school education and is able to read, write and do simple math, such as add and subtract. She could perform occasional postural maneuvers, but could not climb ladders, ropes, or scaffolds; needed to avoid concentrated exposure to moving machinery and heights; and needed to avoid concentrated exposure to odors, dusts, gases, and poor ventilation. In addition, the claimant could perform simple, unskilled work that was not performed at production rate, meaning that it is not paid by the piece or on an assembly line. Further, the work needed to be essentially isolated, with only occasional supervision and low stress, defined as only occasional changes in the work setting.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on September 12, 1966 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

3

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 28, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 890-901)

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. "The inquiry performed is the threshold inquiry

4

of determining whether there is the need for a trial – whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor or either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This standard mirrors the standards for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250-51 (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g)

5

affirm, modify, or reverse the [Commissioner]'s decision with or without remand to the [Commissioner] for rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yukert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent person under the SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i),

6

416.920(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to his past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step,

the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [her] medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

### B.     Plaintiff's Arguments on Appeal

#### 1.     Step 5 Analysis

Following the ALJ's first decision, the court remanded the case because the ALJ failed to reconcile Bowers' limitation against production pace or assembly line work with the VE's identification of packing, assembly, and inspecting jobs, which on their face include such work. *See Bowers v. Astrue*, C.A. No. 2012 WL 3150392, at *8 (D. Del. Aug. 2, 2012). Bowers now alleges that the ALJ did not follow the court's instructions on remand, relying upon the same packing, assembly, inspecting, and security jobs that this court previously determined could not meet the Commissioner's Step 5 burden. (D.I. 16 at 4-7) Essentially, Bowers' claim is that the ALJ has willfully ignored the court's order on remand, and the court must reach the same outcome with regard to the determination of sufficient jobs existing in the economy. In response, the Commissioner alleges that the ALJ properly identified at least one job – unarmed security guard – that Bowers could perform that existed in significant numbers in the national economy. (D.I. 19 at 10-13)

During the first hearing, the ALJ relied on the VE's testimony as follows:

> ... [G]iven all of these factors the individual would be able to perform the requirements of representative occupations such as packer (DOT 920.687-166),

8

> unskilled work performed at the light exertional level, with 150,000 jobs existing in the national economy and 600 jobs existing in the regional economy; inspector (DOT 727.687-062), unskilled work performed at the light exertional level, with 90,000 jobs existing in the national economy and 500 jobs existing in the regional economy; unarmed security guard (DOT 372.667-034), unskilled work performed at the light exertional level, with 200,000 jobs existing in the national economy and 1,500 jobs existing in the regional economy; surveillance system monitor (DOT 379.367-010), unskilled work performed at the sedentary exertional level, with 90,000 jobs existing in the national economy 300 jobs existing in the regional economy; assembler (DOT 734.687-018), unskilled work performed at the sedentary exertional level, with 100,000 jobs existing in the national economy and 400 jobs existing in the regional economy; and inspector (DOT 669.687-014), unskilled work performed at the sedentary exertional level, with 90,000 jobs existing in the national economy and 400 jobs existing in the regional economy.

(Tr. at 901) The court then ruled that "[t]he ALJ's conclusion that sufficient jobs exist for Plaintiff in the national economy is not supported by substantial evidence, and is remanded; the Court need not reach the issue of whether an unarmed security guard job is 'low stress.'" (Tr. at 967)

The transcript from the second hearing before the ALJ lacks any testimony regarding jobs available in the national and regional economy that meet Bowers' limitations. (Tr. at 930-33) Instead, the ALJ asked the VE if she agreed with the VE's indication from the first hearing that Bowers' past work for purposes of the hypothetical was "chicken deboner, light and unskilled." (Tr. at 930)

It appears that the ALJ again relied on the VE's testimony from the first hearing, despite the fact that the court previously rejected ALJ's Step 5 determination as being fundamentally at odds with the limitations the ALJ had placed on Bowers' work. (Tr. at 966-67) Because the ALJ's findings from the second hearing have not corrected the deficiencies from the first proceeding, especially in light of the complete absence of any questions posed to the VE by the ALJ in the second hearing, I recommend that the court award benefits in favor of Bowers.

## 2. Evaluation of Medical Evidence

Bowers next alleges that the ALJ did not properly evaluate the medical evidence of record and altered her prior findings to issue an unfavorable decision. (D.I. 16 at 8-13) More specifically, Bowers challenges the weight accorded to Dr. Watson's opinion, the determination that the non-examining state agency's opinion had no record support, the determination regarding Bowers' psychiatric review, and the lack of explanation for finding a "light" RFC against the weight accorded Dr. Lifrak's opinion. (*Id.*)

In response, the Commissioner contends that the ALJ properly evaluated the medical evidence and explained her reasons for the weight assigned to each of the medical opinions. (D.I. 19 at 13-17) Specifically, the Commissioner claims that the opinion of Dr. Watson is inconsistent with the record, and notes that the court previously agreed with the ALJ's assessment of Dr. Watson's opinion. (*Id.* at 14-15) The Commissioner further alleges that the ALJ properly concluded that the objective evidence and Bowers' subjective complaints supported additional postural, hazard, and environmental restrictions beyond those cited by Dr. Lifrak in his opinion, and the ALJ's RFC determination for a reduced range of light work was proper because Bowers was able to engage in many normal daily activities despite limitations on her ability to sit and stand. (*Id.* at 15-17)

### a. Dr. Watson's opinion

Despite the fact that no new medical evidence was admitted to the record between the ALJ's first and second decisions on October 28, 2009 and April 12, 2013, respectively, the ALJ altered the weight given to several portions of the record in the second ruling following remand without providing an explanation for the change. For example, in her first decision, the ALJ accorded "considerable weight" to Dr. Watson's opinion that Bowers was capable of simple,

10

unskilled work, noting that the opinion was supported by the objective findings and Bowers' work history. (Tr. at 17) The court subsequently determined that the ALJ properly assessed Dr. Watson's opinion (Tr. at 959-60), but faulted the ALJ for not addressing Dr. Watson's "moderately severe" limitations in determining whether Bowers' depression comprised a listed impairment (Tr. at 966). The court concluded that the ALJ's decision that Bowers' depression did not match any listed impairments was not supported by substantial evidence. (Tr. at 966)

Despite the court's approval of the ALJ's analysis crediting Dr. Watson's opinion, the ALJ accorded limited weight to the same opinion by Dr. Watson in the second decision, stating that the level of restriction assigned to Bowers was inconsistent with the evidence of record. (Tr. at 899) Specifically, the ALJ noted that Bowers did not participate in any verbal or physical altercations during the relevant time period even though she had a history of altercations in school and at work,[5] she was cooperative at the consultative exam and hearings, she was able to interact appropriately and answer all questions with excellent memory and concentration, and she was able to manage her own finances. (*Id.*)

If the ALJ continued to assign "considerable weight" to Dr. Watson's opinion on remand, then it would have been necessary for the ALJ to address whether Bowers' depression comprised a listed impairment, as directed in the court's decision remanding on this issue. Matching a listed impairment would have resulted in Bowers being presumed disabled at Step 3 of the analysis. It appears that the ALJ changed the weight assigned to Dr. Watson's opinion to achieve a finding that Bowers is not disabled. The ALJ's decision to change the weight given to Dr. Watson's opinions, despite the lack of new medical evidence on the record, is not supported by substantial evidence.

---

[5] The record contains at least one instance during the relevant time period that Bowers was in a fight. (Tr. at 317)

11

### b. Psychiatric review

The ALJ also modified her determination relating to Bowers' psychiatric review in her second decision. Specifically, the ALJ found that Bowers was moderately limited in terms of social functioning in her first decision, but on remand, found that Bowers was only mildly limited in this regard. (D.I. 16 at 9) The ALJ did not acknowledge the change in her reasoning, but supported her decision on remand for the same reasons given to support the change in weight assigned to Dr. Watson's opinions, discussed at § IV.B.2(a), *infra*. The ALJ also gave partial weight to the opinions of state agency consultants Dr. Christopher King and Dr. Carlen Tucker-Okine, who found that Bowers' account of her daily activities supported only a mild restriction in maintaining social functioning. (Tr. at 899)

### c. Non-examining state agency physicians' opinions

The ALJ altered her determination regarding the weight given to the non-examining state agency physicians as well. In the ALJ's first decision, she concluded that the non-examining state agency physicians' opinions should be given "great weight" because they were consistent with an RFC of light work, but this determination was reversed by the court because the state agency physicians identified only a limited range of sedentary work. (Tr. at 957-58) The court specifically rejected the Commissioner's argument that light work includes the limitation of "sitting most of the time" under the label of "reduced" light work because the ALJ did not address the opinions' conclusions of sedentary work. (Tr. at 958)

On remand, the ALJ gave the state agency physicians' opinions only partial weight because "the records do not support a standing/walking restriction of two hours in an eight-hour workday," specifically citing Bowers' ability to engage in normal daily activities. (Tr. at 897) The ALJ describes Bowers' activities in her opinion as follows:

12

> [T]he claimant reported that she was able to watch television, check the mail, help care for her pet cats, prepare occasional meals, use public transportation, shop in stores for food and clothing, count change, pay bills, handle a savings account, use a checkbook/money order, and play computer games. In addition . . . she could walk, drive, manage finances, vacuum, dust, water plants, go to the store once a month, and watch television. Subsequently . . . the claimant acknowledged that she was able to drive, watch television, prepare simple meals, do laundry, shop in stores for food and clothing, read, watch television, occasionally use a computer, and manage her finances. . . . [T]he claimant also testified that she was able to perform personal care activities, prepare simple meals, clean her room, make her bed, watch television, and do laundry.

(Tr. at 898) Although the ALJ provided reasons for rejecting the two hour standing/walking restriction, the ALJ failed to explain why her reasoning changed on remand. Contrary to the Commissioner's argument, the evidence on the record should form the basis for the ALJ's conclusions regarding the level of work Bowers is capable of performing, and not vice versa. The limitations placed on Bowers' capabilities by the state agency physicians did not change in the period between the ALJ's first and second decisions. Therefore, the ALJ's decision to change the weight given to the state agency physicians' opinions indicates that the ALJ was focused not on the limitations supported by the medical evidence, but rather on the label associated with the level of work Bowers could perform.

### d. Dr. Lifrak's opinion and RFC determination

The ALJ also altered the weight given to the opinion of Dr. Lifrak and the finding of a "light" RFC. In her first decision, the ALJ accorded little weight to Dr. Lifrak's opinion, which limited Bowers to sedentary work. (Tr. at 17) The court reversed the ALJ's determination as it pertained to Dr. Lifrak's opinion because "the ALJ does not specify the medical evidence that allegedly contradicts Dr. Lifrak's opinion," and to discredit a decision based on an actual examination must be supported by more than "mere conclusory statements." (Tr. at 962) On remand, the ALJ gave great weight to Dr. Lifrak's opinion that Bowers was not precluded from

13

performing all work, but rejected the lifting and non-exertional limitations found in his opinion because they were not supported by the records of a treating physician. (Tr. at 896-97) In a departure from the ALJ's first decision, the ALJ did not acknowledge Dr. Lifrak's conclusion that Bowers is limited to sedentary work in her second decision. (*Id.*)

These unexplained departures from the ALJ's original assessment of the same evidence suggests that the ALJ's second analysis of the record following remand was result-oriented. *See Salvetti v. Astrue*, 2011 WL 6739578, at *10-11 (D. Md. Dec. 21, 2011) (remanding the case because ALJ Showalter failed to reference her RFC finding from her previous decision and failed to follow the instructions of the Appeals Council on remand). Because the ALJ's determination appears to have been based on the desired result, rather than the medical evidence of record, an award of benefits to Bowers is warranted.

### 3. Award of Benefits

Bowers requests that the court award her disability benefits instead of remanding this case to the ALJ. (D.I. 16 at 15) "An immediate award of benefits is justified only where a fully-developed record 'clearly points in favor of a finding that the claimant is statutorily disabled.'" *Castile v. Astrue*, 2011 WL 4102539, at *9 (W.D. Pa. Sept. 14, 2011) (quoting *Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010)). The fact that this court has already remanded the case for a second hearing weighs in favor of an award of benefits and against another remand. *Id.* I recommend that the court grant Bowers' request for the awards of benefits.[6]

---

[6] Bowers asks this court, at a minimum, to enter a finding of disability for the period of April 6, 2006 through April 6, 2007 based on the number of surgeries Bowers had during that time, the opinions of Dr. Barton Clements, and the testimony of the VE from the first hearing. (D.I. 16 at 13-14) In light of the recommendation that the court enter an award of benefits in favor of Bowers for the period of disability in question, the court need not address this alternative argument.

14

## V. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Bowers' motion for summary judgment (D.I. 15), DENY the Commissioner's cross-motion for summary judgment (D.I. 18), and award benefits to Bowers.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 12, 2015

Sherry R. Fallon
United States Magistrate Judge